# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

2016-2170, 2016-2221

NEXLEARN, LLC,

Plaintiff - Appellant,

v.

ALLEN INTERACTIONS, INC.,

Defendant - Cross-Appellant.

On Appeal from the United States District Court
for the District of Kansas,
Case No. 15-CV-01294-EFM-KGG
Hon. Eric F. Melgren

---

## PRINCIPAL AND RESPONSE BRIEF FOR DEFENDANT-CROSS-APPELLANT ALLEN INTERACTIONS, INC. (CORRECTED)

---

Martin B. Pavane
Darren S. Mogil
COZEN O'CONNOR
277 Park Avenue
New York, NY 10172
(212) 883-4900

*Attorneys for Defendant-Cross-Appellant Allen Interactions, Inc.*

## ALLEN INTERACTIONS, INC.'S CERTIFICATE OF INTEREST

Counsel for Defendant-Cross-Appellant, Allen Interactions, Inc., certifies that:

1.    The full name of each party represented by me is:

      Allen Interactions Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

      Allen Interactions Inc.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

      None

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

      Steven P. Katkov of Cozen O'Connor and Scott R. Schillings of Hinkle Law Firm LLC.

      COZEN O'CONNOR

September 7, 2016      By: */s/ Martin B. Pavane*
      Martin B. Pavane
      *Attorneys for Defendant-Cross-Appellant Allen Interactions Inc.*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ....................................................................... i

TABLE OF AUTHORITIES ............................................................... iii

I.   STATEMENT OF RELATED CASES .......................................1

II.  JURISDICTIONAL STATEMENT.........................................1

III. STATEMENT OF THE ISSUES PRESENTED .....................2

IV.  STATEMENT OF THE CASE .................................................3

V.   STATEMENT OF FACTS.........................................................5

     A.   NexLearn's Complaint...................................................5
     B.   AI And Its ZebraZapps Product...................................6
     C.   AI's Minimal Contacts With Kansas ..........................6
     D.   The NDA and the EULA................................................8
     E.   NexLearn's Argument For Asserting Personal Jurisdiction Over
          AI In Kansas ...............................................................10
     F.   The District Court's Decision....................................10

VI.  SUMMARY OF THE ARGUMENT ......................................12

VII. ARGUMENT .........................................................................14

     A.   The Law........................................................................14
          1.   Specific Personal Jurisdiction...........................14
          2.   Supplemental Jurisdiction .................................16
     B.   AI Is Not Subject To Personal Jurisdiction In Kansas.......17
          1.   NexLearn Waived Any Argument That NexLearn's Patent
               Infringement Claim Arises Out Of Or Relates To AI's Access
               To NexLearn's SimWriter Product Under The EULA .............17
          2.   In Any Event, The EULA Does Not Subject AI To Personal
               Jurisdiction In The District Of Kansas .........................19
          3.   AI's "Other Kansas Contacts" Do Not Support Specific
               Personal Jurisdiction Over AI For NexLearn's Patent
               Infringement Claim ........................................................23
     C.   NexLearn Is Not Entitled To Jurisdictional Discovery ....................32
     D.   Conclusion Regarding Specific Personal Jurisdiction......................34
     E.   Alternatively, NexLearn's Patent Infringement And Breach Of
          Contract Claims Should Be Dismissed For Failure To State A
          Claim.................................................................................35

     **1.**   **NexLearn's Patent Infringement Claim** ........................................**35**

     **2.**   **NexLearn's Breach Of Contract Claim Should Also Be**
        **Dismissed For Failure To State A Claim** ....................................**47**

**VIII.**  **CONCLUSION** ..........................................................................................**50**

**IX.**  **STATEMENT OF ORAL ARGUMENT** ....................................................**50**

**CERTIFICATE OF SERVICE** .........................................................................**51**

**CERTIFICATE OF COMPLIANCE** ...............................................................**52**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3D Sys., Inc. v. Aarotech Labs., Inc.*,
   160 F.3d 1373 (Fed. Cir. 1998) ........................................................14

*Accenture Global Servs. v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ......................................................41

*Affinity Labs of Texas LLC v. DirecTV*,
   No. 6:15-cv-00030, 2015 U.S. Dist. LEXIS 92889 (W.D. Texas
   July 7, 2015).....................................................................37, 45

*Alice Corp. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) .............................................................*passim*

*Amgen, Inc. v. Genetics Inst., Inc.*
   98 F.3d 1328 (Fed. Cir. 1996) ...................................................20, 27

*Appistry Inc. v. Amazon.com Inc.*,
   No. C15-311, 2015 U.S. Dist. LEXIS 90004 (W.D. Wash. July 9,
   2015) ...............................................................................37

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
   133 S. Ct. 2107 (2013)...............................................................35

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
   552 F.3d 1324 (Fed. Cir. 2008) .................................................*passim*

*Bagby v. Merrill Lynch*,
   174 F.Supp.2d 1199 (D. Kan. 2001)..................................................49

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................48

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ......................................................42

*Calder v. Jones*,
   465 U.S. 783 (1984)..................................................................26

iii

*Clark v. Crues*,
    App. No. 2007-1377, 260 Fed. Appx. 292 (Fed. Cir. 2008) ........................20, 27

*Clear with Computers, LLC v. Altec Inds., Inc.*,
    No. 6:14-cv-79, 2015 U.S. Dist. LEXIS 28816 (E.D. Tex. Mar. 3,
    2015) ................................................................................................................37

*Cogent Medicine, Inc. v. Elsevier, Inc.*,
    70 F.Supp.3d 1058 (N.D. Cal. 2014) ..............................................................37

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ..................................................................46, 47

*Diamond v. Diehr*,
    450 U.S. 175, 101 S. Ct. 1048, 67 L. Ed. 2d 155 (1981) ............................46, 47

*Eclipse IP LLC v. McKinley Equipment Corp.*,
    No. SACV 14-742-GW, 2014 U.S. Dist. LEXIS 125529 (C.D. Cal.
    Sept. 4, 2014) ...................................................................................................37

*Electronics for Imaging, Inc. v. Coyle*,
    340 F.3d 1344 (Fed. Cir. 2003) .......................................................................14

*Enfish, LLC v. Microsoft Corp.*,
    822 F. 3d 1327 (Fed. Cir. 2016) ..................................................................46, 47

*Enutroff, LLC v. Epic Emergent Energy, Inc.*,
    Civ. No. 14-CV-2389-EFM-GLR, 2015 U.S. Dist. LEXIS 11666,
    *11 (D. Kan. Feb. 2, 2015) ..............................................................................15

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
    No. 8:14-cv-2685-T-23MAP, 2015 U.S. Dist. LEXIS 81999 (M.D.
    Fla. June 24, 2015)...........................................................................................37

*Five Star Automatic Fire Prot., LLC v. Nuclear Waste Partnership*,
    LLC, Civ. No. 14-622JCH/GBW, 2016 U.S. Dist. LEXIS 63592
    (D.N.M. May 13, 2016) ....................................................................................48

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    582 F.3d 1288 (Fed. Cir. 2009) ..................................................................18, 33

*GAF Building Materials Corp. v. Elk Corp. of Dallas*,
    90 F.3d 479 (Fed. Cir. 1996) ...............................................................19, 27, 30

iv

*Gemmy Indus. Corp. v. Chrisha Creations Ltd.*,
    Case No. 03-2527-JWL, 2004 U.S. Dist. LEXIS 2170 (D. Kan.
    Jan. 28, 2004) ...............................................................................20, 27, 30, 32

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*,
    No. 12-1736-LPS-CJB, 2014 U.S. Dist. LEXIS 122780 (D. Del.
    Sept. 3, 2014) ..........................................................................................37

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
    527 F.3d 1318 (Fed. Cir. 2008) ..........................................................18, 33

*Gro Master, Inc. v. Farmweld, Inc.*,
    920 F. Supp. 2d 974 (N.D. Iowa 2013) .........................................................32

*HollyAnne Corp. v. TFT, Inc.*,
    199 F.3d 1304 (Fed. Cir. 1999) ...................................................19, 30, 31, 32

*Hoover Group, Inc. v. Custom Metalcraft, Inc.*,
    66 F.3d 299 (Fed. Cir. 1995) .................................................................20, 27

*I/P Engine, Inc. v. AOL Inc.*,
    576 F. App'x 982 (Fed. Cir. 2014) ..............................................................38

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) .................................................................41

*Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*,
    205 F.3d 1244 (10th Cir. 2000) .................................................................21

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) .................................................................45

*Keehn v. United States*
    App. No. 2013-5084, 541 Fed. Appx. 996 (Fed. Cir. 2013) ..............................48

*Landmark Technology, LLC v. Assurant, Inc.*,
    No. 6-15-cv-00076, 2015 U.S. Dist. LEXIS 94511 (E.D. Texas
    July 14, 2015)...........................................................................................37

*Larada Scis., Inc. v. Skinner*,
    Case No. 2:15-cv-0399-JNP, 2015 U.S. Dist. LEXIS 161797 (D.
    Utah Dec. 2, 2015) ...................................................................................25

v

*LCW Auto. Corp. v. Restivo Enters.*,
   2004 U.S. Dist. LEXIS 19290 (W.D. Tex. Sept. 24, 2004) ..............................32

*Millennium Enters. v. Millennium Music, LP*,
   33 F. Supp. 907 (D. Or. 1999) ....................................................................29

*Morrison Co., Inc. v. WCCO Belting, Inc.*,
   35 F. Supp.2d 1293 (D. Kan. 1999).........................................................16, 34

*OIP Technologies, Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) ................................................................36, 45

*Open Text S.A. v. Alfresco Software Ltd.*,
   No. 13-cv-04843, 2014 U.S. Dist. LEXIS 132080 (N.D. Cal. Sept.
   19, 2014) ...........................................................................................................37

*Oregon Precision Indus., Inc. v. International Omni-Pac Corp.*,
   889 F. Supp. 412 (D. Or. 1995) ...........................................................20, 27, 30

*Outdoor Channel, Inc. v. Performance One Media*,
   LLC, 826 F. Supp. 2d 1271 (N. Ok. 2011).......................................................26

*Pehr v. Sunbeam Plastics Corp.*,
   874 F.Supp. 317 (D. Kan. 1995)................................................................21, 22

*Pennington Seed, Inc. v. Produce Exchange No. 299*,
   457 F.3d 1334 (Fed. Cir. 2006) ................................................................14, 15

*Planet Bingo, LLC v. VKGS LLC*,
   576 Fed. Appx. 1005 (Fed. Cir. 2014).......................................................41, 45

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
   148 F.3d 1355 (Fed. Cir. 1998) .........................................................................28

*Ricoh Co. v. ASUSTeK Computer, Inc.*,
   481 F. Supp. 2d 954 (W.D. Wis. 2007) .............................................................28

*Sage Prods., Inc. v. Devon Indus., Inc.*,
   126 F.3d 1420 (Fed. Cir. 1997) ................................................................18, 33

*Salmon Spawning & Recovery Alliance v. United States Customs &
   Border Prot.*,
   550 F.3d 1121 (Fed. Cir. 2008) ................................................................16, 34

vi

*Shrader v. Biddinger*,
   633 F.3d 1235 (10th Cir. 2011) ..........................................................25, 26, 32

*Singleton v. Wulff*,
   428 U.S. 106 (1976)........................................................................18, 33

*Sprint Comms. Co. v. Mushahada Int'l USA, Inc.*,
   Civ. No. 05-2168-KHV, 2005 U.S. Dist. LEXIS 42552 (D. Kan.
   July 29, 2005)........................................................................21, 22

*State Indus. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985) ..................................................20, 27

*Stauffer v. Brooks Bros. Group*,
   758 F.3d 1314 (Fed. Cir. 2014) ..................................................18, 33

*Trintec Indus., Inc. v. Pedre Promotion Prods., Inc.*,
   395 F.3d 1275 (Fed. Cir. 2005) ..................................................*passim*

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
   No. 13- 1771, 2014 U.S. Dist. LEXIS 122457 (D. Del. Sept. 3,
   2014) ..................................................................................37

*Versata Dev. Group, Inc. v. SAP Am., Inc.*,
   793 F.3d 1306 (Fed. Cir. 2015) ..................................................42, 43

**Statutes**

28 U.S.C. §§ 1331 and 1338(a)..........................................................1, 16

28 U.S.C. §1295(a)(1) ..........................................................................1

28 U.S.C. §1367 ..........................................................................11, 16

35 U.S.C. § 101 ..........................................................................*passim*

K.S.A. 60-308(b)(5) ..........................................................................16

K.S.A. 60-511(1)..........................................................................49

K.S.A. § 60-308 ..........................................................................14

K.S.A. § 60-308(b)..........................................................................23

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..........................................................................2, 37

## I.    STATEMENT OF RELATED CASES

Defendant-Cross-Appellant, Allen Interactions Inc. ("AI"),[1] is not aware of any other appeal in or from Case No. 15-CV-01294-EFM-KGG (D. Kan.) that was previously before this or any other appellate court, nor is AI aware of any case in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

## II.    JURISDICTIONAL STATEMENT

On May 4, 2016, the District Court entered a final and appealable judgment granting AI's motion to dismiss and dismissing the action.  The District Court had jurisdiction over the action giving rise to this appeal under 28 U.S.C. §§ 1331 and 1338(a).

On May 31, 2016, NexLearn filed a Notice of Appeal, and on June 14, 2016, AI timely filed a Notice of Cross Appeal.  This Court has exclusive appellate jurisdiction over these appeals pursuant to 28 U.S.C. § 1295(a)(1).

---

[1] Defendant is incorrectly identified in NexLearn's Complaint and in the official caption as "Allen Interactions, Inc."

1

## III.  STATEMENT OF THE ISSUES PRESENTED

Whether the District Court's finding that AI is not subject to personal jurisdiction in the District of Kansas was correct and should, therefore, be affirmed.

If this Court does not affirm the District Court's judgment that AI is not subject to personal jurisdiction in the District of Kansas, AI's conditional cross appeal presents the issues of whether NexLearn, LLC's ("NexLearn") patent infringement claim should be dismissed with prejudice because the claims of U.S. Patent No. 8,798,522 ("the '522 patent")[2] are invalid for claiming unpatentable subject matter in violation of 35 U.S.C. § 101, and whether NexLearn's breach of contract claim should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted because NexLearn did not plead an essential element of that cause of action and/or because that cause of action is time barred by the statute of limitations.

---

[2] In Plaintiff's Complaint, NexLearn alleges infringement of "U.S. Patent No. 8,7<u>82</u>,522" (emphasis added), but that patent is not owned by NexLearn and concerns technology not at issue.  Based on a review of publicly available records, and as confirmed by NexLearn's counsel, the correct patent is U.S. Patent No. 8,7<u>98</u>,522.

## IV.    STATEMENT OF THE CASE

On September 24, 2015, plaintiff NexLearn, filed in the United States District Court for the District of Kansas a Complaint for patent infringement and breach of contract.  Appx0036-0044.

On December 11, 2015, defendant AI moved to dismiss NexLearn's Complaint because AI is not subject to personal jurisdiction in the District of Kansas.  In the alternative, AI moved to dismiss NexLearn's claims for patent infringement and breach of contract because NexLearn's Complaint failed to state a cause of action for either of those claims.

On January 11, 2016, NexLearn filed its opposition to AI's motion to dismiss, and on January 25, 2016, AI filed its reply.

On May 4, 2016, the District Court issued a Memorandum and Order dismissing NexLearn's Complaint because AI was not subject to personal jurisdiction in the District of Kansas.  Appx0001-0018.  Because the District Court determined that it lacked personal jurisdiction over AI, the Court did not reach the other aspects of AI's motion seeking dismissal of NexLearn's patent infringement and breach of contract claims for failure to state a claim.

On May 31, 2016, NexLearn filed a Notice of Appeal. Appx0245- 0246.

On June 14, 2016, AI timely filed a Notice of Cross Appeal.  Appx0247-0249.

## V.    STATEMENT OF FACTS

### A.    NexLearn's Complaint

NexLearn's Complaint asserts two causes of action – patent infringement and breach of contract.

NexLearn's patent infringement claim asserts that AI's ZebraZapps software product infringes the '522 patent.  Appx0038-0039.  The '522 patent is titled "Simulation Authoring Tool."  Appx0020.  The application for the '522 patent was published on October 29, 2009, and the '522 patent issued on August 5, 2014.  Appx0020.  The claims of the '522 patent purport to cover the idea of creating social simulations for educational and training purposes and implementing those simulations on a generic computer.  Appx0029-0030, '522 patent, 11:17-14:64.[3]

NexLearn's breach of contract claim asserts that AI misused NexLearn's confidential information in violation of a Non-Disclosure Agreement ("NDA") between NexLearn and AI.    Appx0038; Appx0042-0044.    According to NexLearn's Complaint, AI's ZebraZapps product has functions that "appear" to mimic features that AI learned from NexLearn pursuant to the NDA.  Appx0038, ¶ 9.

---

[3]  References to the '522 patent are in the format "column:line."

5

### B.     AI And Its *ZebraZapps* Product

Defendant AI is a Minnesota corporation with a principal place of business at 1120 Centre Pointe Drive #800, Mendota Heights, MN 55120.  Appx0146, ¶ 2. AI designs and develops custom e-learning and blended learning (*e.g.*, web-based plus live instruction) solutions; provides online and instructor-led training on the design and development of e-learning programs; provides learning strategy consulting; and offers through AI's website a subscription-based software product known as "ZebraZapps," the product accused in NexLearn's Complaint. Appx0146, ¶ 3.

ZebraZapps is an authoring and publishing software platform that allows subscribers to collaborate, create, publish and share online multimedia instructional programs for virtually any industry and situation.  These instructional programs can range from simple presentations to complex game-like solutions that can be published in the iTunes, Google and Amazon app stores.  Appx0146, ¶ 4.

### C.     AI's Minimal Contacts With Kansas

AI introduced its accused ZebraZapps product in the fourth quarter of 2011. In every year since AI introduced its ZebraZapps product, less than 1% of AI's revenue has come from that product; the rest of AI's revenue has come from AI's other services. Appx0146, ¶ 5.  Although AI maintains a website through which

6

users can purchase the ZebraZapps product, AI has never sold its ZebraZapps product to anyone in Kansas through that website or otherwise.  Appx0147, ¶ 6.

In fact, for the five year period from December 2010 to December 2015, AI's total revenue from sales into Kansas was $54,250, representing about one-tenth of one percent of AI's revenue for that period, and that entire amount was derived from a single sale to a single customer unrelated to AI's accused ZebraZapps product.  Appx0147, ¶ 6.

During that five-year period, AI did not have any sales representatives based in Kansas; no AI personnel attended any client meetings, trade shows, or business conferences in Kansas; AI paid no sales, income or other tax to the State of Kansas, or to any city, town, or other governmental entity in Kansas; AI did not have any bank accounts in Kansas; AI did not maintain any office in Kansas; and AI did not own any real estate in Kansas.  Appx0147, ¶¶ 7-11.

Between August 12, 2013, and September 9, 2014, AI sent a total of six emails to two Kansas residents with information concerning AI's ZebraZapps product.  Appx0187, ¶ 2; Appx0191-0208.  However, both of those residents were employees of NexLearn whose email addresses were in AI's "lead" database because they had expressed an interest in the ZebraZapps product and therefore had received AI's email blasts. Appx0244, ¶ 3.  Five of the emails predate issuance

7

of the suit patent, and none constitutes an offer for sale of the ZebraZapps product. Appx0191-0208.

AI is a member of a trade organization, ATD ("Association for Talent Development"). ATD hosts conferences throughout the country, and while AI has presented at several ATD conferences, AI has never presented at a conference in Kansas. Appx0147, ¶ 8. AI also advertises in ATD's national publication. Those advertisements identify AI's website address, but do not include any reference to AI's ZebraZapps product. Appx0188, ¶ 7; NexLearn Br., p. 6.

### D.    The NDA and the EULA

AI and NexLearn entered into the NDA in February 2009 when AI was contemplating a collaboration with NexLearn. Appx0147, ¶ 12; Appx0148-0151. At about the same time, AI assented to an End User License Agreement ("EULA") for NexLearn's SimWriter product. Appx0188-0189, ¶ 9; Appx0212-0216.

The NDA specifies that Kansas law will apply to any disputes arising under the NDA. Appx0156, ¶ 9. The EULA likewise designates Kansas law as controlling and also designates Kansas as the forum for resolving disputes "arising out [sic] or related to this Agreement or the [SimWriter] Product." Appx0215.

After agreeing to the NDA and the EULA, AI reviewed NexLearn's SimWriter product, but as NexLearn acknowledges (NexLearn Br., p. 4), AI ultimately decided against a collaboration with NexLearn. Appx0038, ¶ 9. During

8

the discussions concerning a possible collaboration, AI personnel never traveled to Kansas; all communications were by phone and email.  Appx0152-0153, ¶¶ 3-6.

According to NexLearn, AI "accessed the trial version [of SimWriter] at least four times, and the data it accessed was housed on servers located in Kansas." Appx0003.  NexLearn acknowledges that "Allen's access occurred prior to the October 29, 2009 publication of NexLearn [sic] application for the '522 patent," and therefore more than four years before the suit patent issued. Appx0210; Appx0020; NexLearn Br., p. 4.

By its terms, the NDA and its obligations terminated 24 months after it was executed:

> This Agreement and its obligations shall terminate 24 months from the date of the expiration of any contract or agreement that may be entered into between the parties. If no contract results from the exploration of opportunities between the parties, this Agreement and its obligations shall terminate 24 months from the date last written below.

Appx0044, ¶ 19.   AI executed the NDA on February 10, 2009. Appx0151. Because no contract resulted from the exploration of a collaboration, the NDA "and its obligations" expired on February 10, 2011.  As noted above, AI first launched its accused ZebraZapps product in the fourth quarter of 2011, *i.e.,* more than seven months after the NDA expired.

### E.    NexLearn's Argument For Asserting Personal Jurisdiction Over AI In Kansas

NexLearn does not argue that AI is subject to general personal jurisdiction in the District of Kansas. Rather, relying solely on its patent infringement claim, NexLearn asserts that AI is subject to specific personal jurisdiction in the District of Kansas. *See, e.g.*, NexLearn Br., pp. 7, 10; Appx0006-0007.

### F.    The District Court's Decision

On May 4, 2016, the District Court, in an 18-page Memorandum and Order, found that AI was not subject to specific personal jurisdiction in the District of Kansas and dismissed NexLearn's Complaint. Appx0001-0018. Because NexLearn did not assert that AI was subject to general jurisdiction in the District of Kansas, and because NexLearn asserted only supplemental jurisdiction for its claim for breach of the NDA, the District Court focused on NexLearn's contention that AI was subject to specific personal jurisdiction based on NexLearn's patent infringement claim. Appx0007.

Applying the Federal Circuit's three-part test for specific jurisdiction, the District Court analyzed AI's contacts with Kansas that NexLearn relied upon in support of its contention that AI was subject to specific personal jurisdiction in the District of Kansas for NexLearn's patent infringement claim. Appx0008. Based on that analysis, the District Court concluded that NexLearn had failed to make a

*prima facie* showing that AI was subject to specific personal jurisdiction in the District of Kansas.  Appx0017.

After determining that AI was not subject to specific personal jurisdiction for NexLearn's patent infringement claim, the District Court also dismissed NexLearn's claim for breach of the NDA for which NexLearn had relied solely upon the District Court's supplemental jurisdiction under 28 U.S.C. §1367. Appx0017-0018.   The District Court also declined to reach AI's alternative grounds for dismissal of NexLearn's Complaint, namely, that NexLearn's patent infringement claim should be dismissed because the '522 patent claims unpatentable subject matter in violation of 35 U.S.C. §101, and that NexLearn's claim for breach of the NDA should be dismissed because NexLearn failed to plead an essential element of that claim and/or because that claim was barred by the statute of limitations.  Appx0001; Appx0018.

## VI.    SUMMARY OF THE ARGUMENT

Because NexLearn relies solely on its patent infringement claim as a basis for specific personal jurisdiction over AI in the District of Kansas, NexLearn must establish both that AI purposely directed its activities to Kansas *and* that NexLearn's patent infringement claim arises out of or relates to AI's activities in Kansas.  The District Court correctly found that NexLearn had not made a *prima facie* showing that either prong of this test was satisfied. Appx0017.

The District Court correctly found that AI's contacts with Kansas were so attenuated that it could not be said that AI purposely directed its activities to Kansas.  As to AI's limited activities in Kansas, the District Court also correctly found that NexLearn's patent infringement claim did not arise out of or relate to those activities.

NexLearn's argument on appeal that its claim for patent infringement arises out of or relates to the EULA is a new argument that NexLearn never made below, and therefore that argument has been waived.  In any event, because any alleged misconduct by AI under the EULA took place years before the suit patent issued, NexLearn's new argument that its claim for patent infringement arises out of or relates to the EULA also fails.

NexLearn's alternative argument that the District Court's judgment should be vacated and the case remanded so that NexLearn may conduct jurisdictional

discovery also fails because NexLearn, having elected not to seek such discovery in the District Court, cannot pursue that relief for the first time on appeal, and in any event such discovery would be futile.

Alternatively, if this Court finds that AI is subject to specific personal jurisdiction in the District of Kansas, NexLearn's patent infringement claim should be dismissed with prejudice by this Court because NexLearn's '522 patent claims unpatentable subject matter in violation of 35 U.S.C. § 101, and NexLearn's claim for breach of the NDA should be dismissed with prejudice by this Court because NexLearn failed to plead an essential element of that claim and/or because that claim is barred by the statute of limitations.

## VII.  ARGUMENT

### A.    The Law

#### 1.    Specific Personal Jurisdiction

Federal Circuit law applies to the issue of personal jurisdiction over AI for NexLearn's patent infringement claim.  *See Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003).  The Federal Circuit reviews personal jurisdiction as an issue of law subject to *de novo* review.  *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376 (Fed. Cir. 1998).

This Court has held that "[t]o establish specific jurisdiction, a plaintiff must demonstrate that the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."  *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008) (internal quotations and citations omitted).

"To establish specific personal jurisdiction in [Kansas], [the plaintiff] must meet two requirements.  First, jurisdiction over [the defendant] must be allowed under the [Kansas] long-arm statute.[4] … Second, if such jurisdiction exists, [the Court] must determine whether its exercise comports with due process." *Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1343-1344 (Fed. Cir. 2006).  Since Kansas' long-arm statute extends to the limits of the due

---

[4] Kan. Stat. Ann § 60-308.

process clause, the specific jurisdiction inquiry reduces to a due process analysis. *See Pennington Seed*, 457 F.3d at 1344 ("Because both parties concede that Missouri's long-arm statute extends to the bounds of the due process clause, … our inquiry reduces to a due process analysis"); *Enutroff, LLC v. Epic Emergent Energy, Inc.*, Civ. No. 14-CV-2389-EFM-GLR, 2015 U.S. Dist. LEXIS 11666, *11 (D. Kan. Feb. 2, 2015) ("The Kansas Supreme Court has interpreted Kansas' long-arm statute to extend jurisdiction to the fullest extent allowed by the Due Process Clause of the Fourteenth Amendment.  Thus, in this case, the Court need not conduct a statutory analysis apart from the due process analysis").

Due process requires a nonresident defendant to have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  *Pennington Seed*, 457 F.3d at 1344.  "A court's consideration of minimum contacts necessary for establishing specific personal jurisdiction generally involves three inquiries: (1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair."  *Id.* (internal quotation omitted).

## 2.     Supplemental Jurisdiction

NexLearn's Complaint asserts only that this Court has "original jurisdiction over the patent infringement claim under 28 U.S.C. §§ 1331 and 1338(a)" and "supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the breach of contract claim."  Appx0036, ¶ 1.  Because NexLearn asserts only supplemental jurisdiction for its claim for breach of the NDA, if this Court affirms the dismissal of NexLearn's patent infringement claim for lack of specific personal jurisdiction over AI, then no basis for exercising supplemental jurisdiction remains, and dismissal of NexLearn's breach of contract claim must also be affirmed.  *See Salmon Spawning & Recovery Alliance v. United States Customs & Border Prot.*, 550 F.3d 1121, 1133 (Fed. Cir. 2008) ("supplemental jurisdiction cannot be exercised when a court does not have original jurisdiction over at least one claim in the suit"); *Morrison Co., Inc. v. WCCO Belting, Inc.*, 35 F. Supp.2d 1293, 1296 (D. Kan. 1999) ("This section [K.S.A. 60-308(b)(5)] may have applied if the settlement agreement was an independent ground for asserting subject matter jurisdiction, but Morrison admits this claim is based on supplemental jurisdiction, pursuant to 28 U.S.C. § 1367.  Therefore, K.S.A. 60-308(b)(5) does not provide the basis for specific jurisdiction").

### B.      AI Is Not Subject To Personal Jurisdiction In Kansas

#### 1.      NexLearn Waived Any Argument That NexLearn's Patent Infringement Claim Arises Out Of Or Relates To AI's Access To NexLearn's SimWriter Product Under The EULA

On appeal, NexLearn argues that its patent infringement claim arises out of and relates to the EULA, which AI agreed to before accessing NexLearn's SimWriter product in early 2009.  According to NexLearn, because the EULA includes a clause providing for exclusive jurisdiction in Kansas for any dispute "arising out of or relating to the [EULA] or the [SimWriter] Product," and because AI developed its accused ZebraZapps product by copying features from SimWriter, specific jurisdiction exists for NexLearn's patent infringement claim because "Allen's infringement arises out of, and relates to *both* the 2009 access and the Product (SimWriter)." NexLearn Br., pp. 7, 10 (emphasis in original).

But NexLearn's Complaint does not even mention the EULA, and NexLearn never argued below that NexLearn's patent infringement claim arises out of or relates to the EULA.[5]  Before the District Court, NexLearn only asserted that its patent infringement claim arises out of one or more of AI's website which offers the ZebraZapps product for sale and is accessible by Kansas residents; AI's

---

[5] In the District Court, NexLearn cited the EULA only in support of its argument that AI had sufficient contacts with Kansas to support specific personal jurisdiction over AI. Appx0166-167; Appx0169.  NexLearn never argued in the District Court that NexLearn's patent infringement claim arose out of or was related to the EULA.

advertising and marketing efforts directed to Kansas residents in pursuit of sales of the ZebraZapps product; and AI's alleged breach of the NDA by using NexLearn's proprietary information to develop AI's ZebraZapps product. Appx0170.

Because NexLearn did not argue below that its patent infringement claim arises out of the EULA, that argument has been waived and cannot be asserted now on appeal.[6] *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("it is the general rule . . . that a federal appellate court does not consider an issue not passed upon below"); *Stauffer v. Brooks Bros. Group*, 758 F.3d 1314, 1322 (Fed. Cir. 2014) ("Issues not properly raised before the district court are waived on appeal"); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1295-96 (Fed. Cir. 2009) (finding arguments waived that were not properly raised before the district court); *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322-1323 (Fed. Cir. 2008) ("we have explained that 'prudential considerations' articulated by the Supreme Court counsel against hearing new arguments for the first time on appeal"); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("In short, this court does not 'review' that which was not presented to the district court").

---

[6] It is therefore not surprising that, as NexLearn acknowledges, "[t]he district court did not address . . . [whether] the EULA's exclusive jurisdiction clause conferred personal jurisdiction over Allen in Kansas." NexLearn Br., p. 10.

## 2.     In Any Event, The EULA Does Not Subject AI To Personal Jurisdiction In The District Of Kansas

Even if this Court were to consider NexLearn's new argument, there would still be no basis for exercising specific personal jurisdiction over AI because NexLearn's patent infringement claim does not arise out of or relate to AI's access to the trial version of NexLearn's SimWriter product under the EULA.

As this Court explained in *Avocent Huntsville,* "[t]o establish specific jurisdiction, a plaintiff must demonstrate that the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that *arise out of or relate to* those activities." *Avocent Huntsville*, 552 F.3d at 1330 (internal quotations and citations omitted; emphasis added). *See also HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 n.4 (Fed. Cir. 1999) ("the test [for 'giving rise' to a cause of action] is whether the activity in the forum state is a basis for the cause of action").

NexLearn does not allege, and cannot allege, that AI's conduct pursuant to the EULA constituted patent infringement. NexLearn alleges only that "Allen's access to the trial version of SimWriter" allowed AI "to build a product that would *later* infringe the patent." NexLearn Br., p. 11 (emphasis added). But it is black-letter law that activities prior to the issuance of a patent cannot constitute patent infringement. *See GAF Building Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996) ("disputes concerning patent validity and infringement

are necessarily hypothetical before patent issuance"); *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 303 (Fed. Cir. 1995) ("a patent cannot be infringed by sales made before its issuance"); *State Indus. v. A.O. Smith Corp.*, 751 F.2d 1226, 1237 (Fed. Cir. 1985) ("Until State got the '879 patent, 22 days before suit, Smith [the accused infringer] had a perfect right to make and sell its LIME TAMER [the accused product], without question, because State had no 'patent rights' which covered it.  A patent has no retroactive effect."); *Clark v. Crues*, App. No. 2007-1377, 260 Fed. Appx. 292, 294 (Fed. Cir. 2008); *Amgen, Inc. v. Genetics Inst., Inc.* 98 F.3d 1328, 1332 (Fed. Cir. 1996); *Gemmy Indus. Corp. v. Chrisha Creations Ltd.*, Case No. 03-2527-JWL, 2004 U.S. Dist. LEXIS 2170, *22-*23 (D. Kan. Jan. 28, 2004) (finding shipment of accused product to forum state did not support personal jurisdiction over defendant for plaintiff's patent infringement claim where shipment occurred prior to patent issuance); *Oregon Precision Indus., Inc. v. International Omni-Pac Corp.*, 889 F. Supp. 412, 417 (D. Or. 1995) (sales by defendant of accused products to customers in Oregon that occurred before plaintiff's patent issued held insufficient for exercise of specific personal jurisdiction over defendant in Oregon).

NexLearn's patent infringement claim does not arise out of or relate to "Allen's access to the trial version of [SimWriter] under the EULA which enabled such [alleged] copying" (NexLearn Br., p. 10), because neither AI's access to

20

Nexlearn's SimWriter in 2009, nor AI's alleged copying of features from SimWriter in the ZebraZapps product that AI released in 2011 -- both of which occurred years before the suit patent issued -- was an act of infringement.

Simply put, because none of AI's alleged conduct governed by the EULA was an act of patent infringement, NexLearn's patent infringement claim does not arise out of or relate to the EULA.

Therefore, even if this Court were to entertain NexLearn's new argument, the EULA is not a proper basis for subjecting AI to specific personal jurisdiction in the District of Kansas for NexLearn's patent infringement claim.

### a.    The Cases On Which NexLearn Relies Are Inapposite

NexLearn cites *Sprint Comms. Co. v. Mushahada Int'l USA, Inc.*, Civ. No. 05-2168-KHV, 2005 U.S. Dist. LEXIS 42552 (D. Kan. July 29, 2005), *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1248 (10th Cir. 2000) and *Pehr v. Sunbeam Plastics Corp.*, 874 F.Supp. 317, 321 (D. Kan. 1995) for the proposition that the exclusive jurisdiction clause of the EULA confers specific personal jurisdiction over AI for NexLearn's patent infringement claim. None of these cases concerns a claim for patent infringement.

In *Intercon*, unlike here, the plaintiff's claim arose out of the defendant's conduct in the forum state, Oklahoma. The plaintiff operated an Internet service that provided customers with access to the World Wide Web and carried their e-

mail messages back and forth.  Beginning in July 1996, the defendant routed its customers' e-mail messages to the wrong domain name using plaintiff's mail server.  Plaintiff brought an action against defendant in the United States District Court for the Western District of Oklahoma, seeking compensation for defendant's unauthorized use of its mail server.  Finding that defendant had notice that it was routing its customer's e-mail through the plaintiff's Oklahoma mail server and that the unauthorized traffic was causing problems for the Oklahoma-based plaintiff, the district court found that the defendant was subject to specific jurisdiction in Oklahoma because plaintiff's claim for unauthorized use of its Oklahoma-based mail server arose out of and was related to defendant's routing of its customers' e-mail through that server.

In *Pehr,* a breach of contract case, the breach arose out of the defendant's activities in the forum state, justifying the exercise of specific personal jurisdiction over the defendant in that state.  Among other things, the defendant entered into a contract with full knowledge that plaintiff was a Kansas resident and that the contract would be performed in Kansas. *See Pehr*, 874 F.Supp. at 320-321.

In *Sprint,* the plaintiff Sprint, a Kansas resident, sued for breach of contract. The court found that the defendant, Mushahada, pursuant to a contract, had purchased telecommunications services from Sprint, that Sprint managed the services from Kansas, and that at least part of the contract was performed in

Kansas.  The court also found that each invoice sent by Sprint to Mushahada for services rendered pursuant to the contract included a notice that Mushahada was subject to personal jurisdiction in Kansas pursuant to subsection 11 of Kansas long-arm statute, K.S.A. § 60-308(b).  Based on those facts, the court found that Mushahada was subject to personal jurisdiction under subsections (5) and (11) of the Kansas long-arm statute, K.S.A. § 60-308(b).[7]  Neither of those provisions is applicable here.

It is not surprising that NexLearn cites *no* case where acts in a forum state that did not constitute patent infringement were found to give rise to or relate to a claim for patent infringement so as to justify the exercise of specific personal jurisdiction over the alleged infringer in the forum state.

**3.     AI's "Other Kansas Contacts" Do Not Support Specific Personal Jurisdiction Over AI For NexLearn's Patent Infringement Claim**

NexLearn argues that although AI's access to SimWriter under the EULA alone confers jurisdiction over AI, AI's "other Kansas contacts and its interactive

---

[7] Subsection (5) subjects an out of state defendant to personal jurisdiction for a cause of action arising out of a contract with a resident of Kansas where at least part of the contract is to be performed in Kansas, and subsection (11) subjects an out of state defendant to personal jurisdiction arising out of a contract with a resident of Kansas concerning, among other things, communication services that are managed, operated, or monitored in Kansas, provided the defendant is put on notice that providing such services may subject the defendant to personal jurisdiction pursuant to subsection 11.

website also compel that result." NexLearn Br., p. 13. As the District Court correctly found, NexLearn is wrong.

### a. AI's Website Does Not Subject AI To Specific Personal Jurisdiction In The District Of Kansas

According to NexLearn, AI's "highly interactive website" provides a basis for specific personal jurisdiction over AI in the District of Kansas for NexLearn's patent infringement claim. NexLearn Br., pp. 13-15.

In *Trintec Indus., Inc. v. Pedre Promotion Prods., Inc.*, 395 F.3d 1275 (Fed. Cir. 2005), this Court provided guidance for determining whether a website suffices to confer personal jurisdiction in a forum state:

> Trintec relies heavily on Pedre's use of its own interactive website to advertise its products, which Trintec alleges customers in the District of Columbia can use to purchase those products from Pedre. The difficulty is that Pedre's website is not directed at customers in the District of Columbia, but instead is available to all customers throughout the country who have access to the Internet. Thus, "the ability of District residents to access the defendants' websites … does not by itself show any persistent course of conduct by the defendants in the District." . . .

> Some cases have suggested that the availability and use of a highly interactive, transaction-oriented website (as opposed to an "essentially passive" website) by itself may support long-arm jurisdiction wherever the site is available to potential customers for the purpose of doing business. *See, e.g.*, *Gorman*, 293 F.3d at 510-13 (discussing general personal jurisdiction based on interactive financial brokerage website); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1125-26

> (W.D. Pa. 1997) (asserting personal jurisdiction under Pennsylvania's long-arm statute based on subscription news service website). Although Trintec has shown that Pedre's websites contain some interactive features aimed at transacting business, it is unclear how frequently those features are utilized or, indeed, whether any District residents have ever actually used Pedre's website to transact business.

*Id*. at 1281.

Here, there is no lack of clarity as to how frequently the features of AI's website were utilized by Kansas residents to purchase AI's accused ZebraZapp's product – the evidence shows that AI derived no revenue at all from sales to Kansas residents of AI's accused ZebraZapps product. *See* Appx0146-0147 (Declaration of Martin Lipshutz submitted in support of AI's motion to dismiss, ¶ 6); *see also Larada Scis., Inc. v. Skinner*, Case No. 2:15-cv-0399-JNP, 2015 U.S. Dist. LEXIS 161797, *14-*16 (D. Utah Dec. 2, 2015) (analyzing Federal Circuit law and concluding that an out-of-state defendant's "interactive" website accessible in the District of Utah was not sufficient to subject the defendant to specific personal jurisdiction where the cause of action did not arise from actual use of the website by Utah residents).

The Tenth Circuit reached a similar conclusion in *Shrader v. Biddinger*, 633 F.3d 1235, 1240-1241 (10th Cir. 2011), a case involving claims for defamation and intentional infliction of emotional distress:

> [I]t is necessary to adapt the analysis of personal jurisdiction to [the internet context] by placing emphasis on the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there.
> . . .
> [E]mphasis on intentionally directing internet content or operations at the forum state has its grounding in the 'express aiming' requirement the Supreme Court developed in [*Calder v. Jones*, 465 U.S. 783 (1984), which the Tenth Circuit determined in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008) requires "an intentional action . . . expressly aimed at the forum state"] to deal with the somewhat analogous question of specific jurisdiction based on content in nationally distributed print media.

*See also Outdoor Channel, Inc. v. Performance One Media*, LLC, 826 F. Supp. 2d 1271, 1284 (N. Ok. 2011) (reaching same conclusion).

Here, AI's website does not "intentionally direct" or "expressly aim" any allegedly infringing activities at Kansas residents. *See Shrader*, 633 F.3d at 1241. AI's website, like the defendant's website in *Trintec,* is not specifically directed at customers in the forum (*i.e.,* Kansas), but rather is available to anyone in the U.S. with internet access.  Nor has AI sold any accused ZebraZapps products to Kansas residents through AI's website or otherwise. Appx0147, ¶ 6.  For these reasons, AI's website does not subject it to specific personal jurisdiction in the District of Kansas for NexLearn's patent infringement claim.

**b.**     **AI Emails to NexLearn Employees Do Not Subject AI To Specific Personal Jurisdiction in the District of Kansas**

In the District Court, NexLearn relied on six emails AI sent to two NexLearn employees as supporting personal jurisdiction over AI in the District of Kansas (Appx0187; Appx0191-0208).   On appeal, NexLearn generally references those emails (NexLearn Br., p. 5), but nowhere argues that those emails are a basis for subjecting AI to specific personal jurisdiction in Kansas for NexLearn's patent infringement claim. *Id., passim.*   In any event, those emails do not support specific personal jurisdiction over AI for NexLearn's patent infringement claim.

First, because NexLearn did not have a cause of action for patent infringement until the suit patent issued on August 5, 2014, NexLearn's cause of action for patent infringement could not have arisen out of emails sent prior to that date.  Five of the six emails relied upon by NexLearn are dated prior to issuance of NexLearn's patent and therefore cannot support specific personal jurisdiction over AI for NexLearn's patent infringement claim. Appx0187; Appx0191-0208.  *See Clark v. Crues*, 260 Fed. Appx. at 294; *Amgen*, 98 F.3d at 1332; *Hoover Group*, 66 F.3d at 303; *State Indus.*, 751 F.2d at 1237; *Gemmy Indus. Corp.*, 2004 U.S. Dist. LEXIS 2170, *22-*23; *GAF Building Materials Corp.* 90 F.3d at 483; *Oregon Precision Indus., Inc.* 889 F. Supp. at 417.

Second, NexLearn's patent infringement claim does not arise out of or relate to the emails.   All of the emails, including the one email that post-dates issuance of the suit patent, provide information about AI's accused ZebraZapps product, but none of them includes an offer for sale or otherwise constitutes an act of infringement.   For this additional reason, the emails are not a proper basis for exercising specific personal jurisdiction over AI for NexLearn's patent infringement claim.

Third, and as NexLearn acknowledges (NexLearn Br., p. 5), all six of the emails sent by AI to NexLearn's two employees, including the one email that post-dates issuance of the suit patent, were email blasts that AI sent to anyone who at any time had expressed an interest in AI's ZebraZapps product (Appx0244, ¶ 3), *i.e.*, the interest expressed by NexLearn's employees in AI's ZebraZapps product provoked AI's email blasts that NexLearn now relies upon.   But, this Court has held that a defendant's conduct in the forum state that was provoked by the plaintiff will not suffice for establishing specific personal jurisdiction.   *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998) (a defendant's "contacts resulting from the 'unilateral activity' of others do not count [as activities by defendant "purposefully directed" toward forum jurisdiction]").   *See also Ricoh Co. v. ASUSTeK Computer, Inc.*, 481 F. Supp. 2d 954, 959 (W.D. Wis. 2007) ("However, common sense requires a conclusion that such a forced and

28

artificial exercise cannot provide the basis for personal jurisdiction. Economic harm to plaintiff does not out 'aris[e] out of' defendants' actions when no sale would have been made but for plaintiff's choice to make a purchase. Alternatively, a strong argument exists that a self-inflicted wound is not an 'injury' at all within the meaning of the statute"); *Millennium Enters. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 911 (D. Or. 1999). For this yet additional reason, none of AI's six emails is a proper basis for exercising specific personal jurisdiction over AI in the District of Kansas for NexLearn's patent infringement claim.

> **c.** **The Choice Of Law And Forum Selection Provisions In The NDA And The EULA Do Not Subject AI To Specific Personal Jurisdiction in the District Of Kansas**

NexLearn also argues that the choice of law clause in the NDA and the choice of law and forum selection clauses in the EULA are a basis for subjecting AI to specific personal jurisdiction in Kansas for NexLearn's patent infringement claim. NexLearn Br., p. 15. The NDA between NexLearn and AI designates Kansas law as controlling (there is no forum selection clause in the NDA) and the EULA designates Kansas law as controlling and Kansas as the forum for resolution of any disputes "arising out or related to this Agreement or the Product [*i.e.*, SimWriter]." Appx0150; Appx0215.

As explained above, NexLearn's patent infringement claim does not arise out of or relate to AI's access to the trial version of NexLearn's SimWriter product under the EULA.

NexLearn's patent infringement claim also does not arise out of or relate to the NDA.  The NDA was executed on February 10, 2009, and by its terms, the NDA and all of its obligations expired on February 10, 2011, 24 months after it was executed. Appx0044.  Because AI's access to NexLearn's SimWriter product under the NDA occurred in 2009 (Appx0210; NexLearn Br., p. 4), years before the suit patent issued, and because the NDA and all of its obligations expired in 2011, years before the suit patent issued, NexLearn's patent infringement claim does not arise out of or relate to the NDA, and it follows that the NDA cannot provide a basis for exercising specific personal jurisdiction over AI for NexLearn's patent infringement claim.  *See Avocent Huntsville*, 552 F.3d at 1330; *HollyAnne Corp.*, 199 F.3d at 1308 n.4; *Gemmy Indus.*, 2004 U.S. Dist. LEXIS 2170, *22-*23; *see also GAF Building Materials*, 90 F.3d at 483; *Oregon Precision*, 889 F. Supp. at 417.

> **d.    AI's Single Sale Of A Non-Infringing Product Into Kansas Does Not Subject AI To Specific Personal Jurisdiction in the District Of Kansas**

NexLearn argues that AI's $54,250 in sales revenue from Kansas over the past five years should subject AI to specific personal jurisdiction in the District of

Kansas for NexLearn's patent infringement claim. NexLearn Br., p. 15. However, all of that revenue was derived from a single sale in 2014 unrelated to AI's accused ZebraZapps product. Appx0147, ¶ 6. Because NexLearn's patent infringement claim does not arise out of or relate to that sale, it cannot provide a basis for exercising specific personal jurisdiction over AI for NexLearn's patent infringement claim. *See Avocent Huntsville*, 552 F.3d at 1330; *HollyAnne Corp.*, 199 F.3d at 1308 n.4.

> **e.      AI's Membership In An Industry Trade Association and Advertisements In The Association's Trade Publication Do Not Subject AI To Specific Personal Jurisdiction in the District of Kansas**

NexLearn also argues as a basis for asserting specific personal jurisdiction over AI for NexLearn's patent infringement claim that "Allen is also involved with the Association for Talent Development ('ATD'), an industry trade association," that "[a]pproximately 350 of ATD's members are from Kansas," that "Allen has presented in at least six ATD conferences," and that "Allen advertises in" a magazine published by the ATD. NexLearn Br., pp. 5-6, 15.

But none of the "at least" six ATD conferences where AI presented were in Kansas (Appx0147, ¶ 8); AI's advertisements in the trade publication referenced only AI and AI's website, and *not* AI's accused ZebraZapps product (NexLearn

Br., p. 6; *see also* Appx0004)[8]; and the fact that approximately 350 members of ATD are from Kansas is immaterial to the jurisdictional inquiry in the absence of a predicate infringing act.

Because NexLearn's patent infringement claim does not arise out of or relate to any of these activities, they are not a proper basis for exercising specific personal jurisdiction over AI in the District of Kansas for that claim. *See Avocent Huntsville*, 552 F.3d at 1330; *HollyAnne Corp.*, 199 F.3d at 1308 n.4; *Gemmy Indus.*, 2004 U.S. Dist. LEXIS 2170, *22-*23.

### C.    NexLearn Is Not Entitled To Jurisdictional Discovery

As a fall back, NexLearn argues that the District Court's judgment should be vacated and the case remanded so that NexLearn can pursue "jurisdictional discovery" to find out "whether Kansas residents other than NexLearn used the Allen website, a factor that the district court deemed dispositive." NexLearn Br., pp. 15-16.

---

[8] Even if AI's advertisements were advertisements for AI's ZebraZapps' product – which they were not – that still would be insufficient to subject AI to specific personal jurisdiction in the District of Kansas.  *See LCW Auto. Corp. v. Restivo Enters.*, 2004 U.S. Dist. LEXIS 19290, *16-*17 (W.D. Tex. Sept. 24, 2004) ("Advertisements in national journals will also not establish personal jurisdiction"); *Gro Master, Inc. v. Farmweld, Inc.*, 920 F. Supp. 2d 974, 982-983 (N.D. Iowa 2013) ("a defendant's publications in a national publication - even a publication based in the forum state - is not enough to establish 'specific' jurisdiction"); *see also Shrader,* 633 F.3d at 1241.

But NexLearn never served jurisdictional discovery below, nor did it ask the District Court for permission to do so.  That being so, NexLearn should not be permitted to assert its belated desire for such discovery as a basis for vacatur and remand.  *See Singleton*, 428 U.S. at 120; *Stauffer*, 758 F.3d at 1322; *Fresenius USA*, 582 F.3d at 1295-96; *Golden Bridge Tech.*, 527 F.3d at 1322-1323; *Sage Prods.*, 126 F.3d at 1426.

NexLearn cites *Trintec* for the proposition that vacatur and remand to allow for jurisdictional discovery is appropriate.  But in *Trintec* this Court found that the record on appeal "suggests that Trintec made a prima facie showing of personal jurisdiction in the district court," and in view of that finding, remanded for jurisdictional discovery to fill out the evidentiary record.  395 F.3d at 1283.  Here, however, NexLearn did not make a *prima facie* showing of specific personal jurisdiction over AI for NexLearn's patent infringement claim, and vacatur and remand for jurisdictional discovery is not appropriate.  *See also* Appx0017 ("Overall, the Court finds that NexLearn *has failed to make a prima facie case* that Allen purposely directed itself to the Kansas forum and that NexLearn's patent infringement claim arises out of or relates to Allen's activities in Kansas." (emphasis added)).  This Court in *Trintec* also clarified that remand for jurisdictional discovery is appropriate only where a party has demonstrated that is can supplement its jurisdictional allegations through discovery.  395 F.3d at 1283.

Here, NexLearn has not demonstrated that jurisdictional discovery would enable it to supplement its jurisdictional allegations.  Indeed, because the record is already clear that no Kansas residents have purchased the accused ZebraZapps product via AI's website or otherwise (Appx0146-0147), discovery would be futile.

Moreover, contrary to NexLearn's assertion, the District Court did not "deem[] dispositive" whether Kansas residents other than NexLearn used the AI website. NexLearn Br., p. 16.  Rather, the District Court explained that "one important factor for evaluating purposeful availment in the internet context is whether any [forum] residents have ever actually used [the defendant's] website to transact business (Appx0013, quoting *Larada Scis.*, 2015 U.S. Dist. LEXIS 161797, *14-*16 (D. Utah Dec. 2, 2015 (emphasis added)) and *Trintech*, 395 F.3d at 1281), and that "even assuming the website constitutes an offer to sell, there is no evidence that Allen made any offer to sell the allegedly infringing product to a Kansas resident via the website."

### D.     Conclusion Regarding Specific Personal Jurisdiction

Because NexLearn argues that AI is subject to specific personal jurisdiction in Kansas only for NexLearn's patent infringement claim, and because AI's contacts with Kansas are insufficient for exercising specific personal jurisdiction over AI with respect to that claim, this Court should affirm the District Court's dismissal of NexLearn's patent infringement claim.  And because NexLearn relies

solely on the District Court's supplemental jurisdiction for its breach of contract claim, this Court should also affirm the District Court's decision not to exercise supplemental jurisdiction over that claim. *See Salmon Spawning & Recovery Alliance*, 550 F.3d at 1133; *Morrison*, 35 F. Supp.2d at 1296.

**E.    Alternatively, NexLearn's Patent Infringement And Breach Of Contract Claims Should Be Dismissed For Failure To State A Claim**

**1.    NexLearn's Patent Infringement Claim**

If this Court does not affirm the District Court's finding that AI is not subject to personal jurisdiction in the District of Kansas, this Court should dismiss with prejudice NexLearn's cause of action for patent infringement because the claims of the '522 patent are directed to patent-ineligible subject matter in violation of 35 U.S.C. § 101, and the '522 patent is, therefore, invalid. This issue was fully briefed before the District Court. However, because the District Court determined that it did not have personal jurisdiction over AI, the District Court did not reach this issue.

**a.    An Abstract Idea Implemented On A Generic Computer Is Not Patentable**

A patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and

abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,* 133 S. Ct. 2107, 2116 (2013), quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012).

Consistent with these cases, in June 2014, the United States Supreme Court held that implementing an abstract concept on a generic computer is not patentable. *See Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). The patents in *Alice* purported to cover a system for using computers to facilitate an escrow arrangement for settling financial transactions. The Supreme Court invalidated those patents, holding that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id*. at 2358.

The Supreme Court in *Alice* established a two-part test for determining whether patent claims are invalid because they claim only abstract ideas. As this Court has explained, "[u]nder the now familiar two-part test described by the Supreme Court in *Alice*, '[w]e must first determine whether the claims at issue are directed to a patent-ineligible concept,' such as an abstract idea." *OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015), quoting *Alice*, 134 S. Ct. at 2355. "If so, we must then 'consider the elements of each claim both individually and "as an ordered combination" to determine

whether the additional elements "transform the nature of the claim" into a patent-eligible application.'" *Id.*, quoting *Mayo*, 132 S. Ct. at 1298, 1297.

The Supreme Court in *Alice* explained that "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. The Court further explained that "[g]iven the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself' and, therefore, applying an abstract idea on a generic computer is 'not enough for patent eligibility.'" *Id.,* quoting *Mayo*, 132 S. Ct. at 1297.

Since the Supreme Court's *Alice* decision, this Court and district courts have routinely invalidated at the pleadings stage patents claiming abstract ideas implemented through generic computers.[9] Indeed, this Court has recognized that

---

[9] *See, e.g., Affinity Labs of Texas LLC v. DirecTV,* No. 6:15-cv-00030, 2015 U.S. Dist. LEXIS 92889 (W.D. Texas July 7, 2015) (granting Rule 12(b)(6) motion); *FairWarning IP, LLC v. Iatric Systems, Inc.,* No. 8:14-cv-2685-T-23MAP, 2015 U.S. Dist. LEXIS 81999 (M.D. Fla. June 24, 2015) (same); *Appistry Inc. v. Amazon.com Inc.,* No. C15-311, 2015 U.S. Dist. LEXIS 90004 (W.D. Wash. July 9, 2015) (granting motion for judgment on the pleadings); *Landmark Technology, LLC v. Assurant, Inc.,* No. 6-15-cv-00076, 2015 U.S. Dist. LEXIS 94511 (E.D. Texas July 14, 2015) (granting Rule 12(b)(6) motion); *Clear with Computers, LLC v. Altec Inds., Inc.*, No. 6:14-cv-79, 2015 U.S. Dist. LEXIS 28816 (E.D. Tex. Mar. 3, 2015) (same); *Cogent Medicine, Inc. v. Elsevier, Inc.*, 70 F.Supp.3d 1058 (N.D. Cal. 2014) (same); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843, 2014 U.S. Dist. LEXIS 132080 (N.D. Cal. Sept. 19, 2014) (same); *Eclipse IP LLC v. McKinley Equipment Corp.*, No. SACV 14-742-GW, 2014 U.S. Dist. LEXIS

"there are clear advantages to addressing section 101's requirements at the outset of litigation. Patent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and courts years of needless litigation." *I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014) (Mayer, J., concurring).

> **b.    Part I Of The *Alice Test*: The Abstract Nature Of The '522 Patent**

The '522 patent claims the abstract idea of creating social simulations, and applying that abstract idea using a generic computer. The '522 patent acknowledges that social simulations have long been used by businesses and educational institutions. The Background of the Invention section of the '522 patent acknowledges that:

> Social simulations are useful tools employed by businesses and educational institutions to help individuals learn to react appropriately to different situations and evaluate the individuals. By creating artificial scenarios that mimic real world situations that the tested individual may face, the simulation allows the individual to react in a pressure-free environment. Thus, if the scenario mimics a pressured situation, the individual will feel more comfortable and will already

---

125529 (C.D. Cal. Sept. 4, 2014) (same); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13- 1771, 2014 U.S. Dist. LEXIS 122457 (D. Del. Sept. 3, 2014) (same); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12-1736-LPS-CJB, 2014 U.S. Dist. LEXIS 122780 (D. Del. Sept. 3, 2014) (same).

have a base from which to make decisions when an
actual pressure situation occurs. Other scenarios may
include executive meetings, employee-employee and
employee-manager        interactions,        teacher-pupil
interactions, and training, both for job-related activities
and sensitivity training, for example situations involving
sexual harassment. Social simulations may be completely
text-based or may include various media elements
including audio, video, and animation. Social simulation
computer programs can also be used to create simple
tests.

Appx0024, '522 patent, 1:13-30.

And under the heading Summary of the Invention, the '522 patent explains:

The present invention provides an improved method of
creating a social simulation. Particularly, the present
invention provides a computer program for authoring,
designing, testing and publishing a social simulation.

Appx0024, '522 patent, 1:55-58.

The '522 patent has 25 claims.  Claim 1 of the '522 patent is representative.

It reads:

A non-transitory computer-readable medium encoded
with a computer program for creating a social
simulation, said computer program comprising:
a code segment for enabling a user to create a plurality of
social simulation stages;
a code segment for enabling said user to create a first
character and a second character and to associate each
of the first character and the second character with at
least one of the plurality of social simulation stages,
each of the characters being a video representation of a
real person;
a code segment for enabling said user to provide
characteristics to each of the first character and the

39

second character, the characteristics including an image, a name, a personality, a title and a position of the respective character;

a code segment for enabling said user to create at least one social interaction between said user and each of the first character and the second character, wherein the first character provides a first character response and the second character provides a second character response that is different than the first character response;

a code segment for enabling said user to create at least one set of possibilities associated with each social simulation stage, wherein each possibility has a consequence which determines the next step of the simulation, the next step of the simulation being either another set of possibilities or an end of the simulation;

a code segment for enabling said user to create a map associating each of said plurality of social simulation stages with at least one other of said plurality of social simulation stages; a code segment for enabling said user to assign a first score value to a first student response and a second score value to a second student response, wherein said first student response and said second student response are received from a student during at least one of said plurality of social simulation stages;

a code segment for enabling said user to assign a condition to a conditional stage of said plurality of social simulation stages such that said student experiences said conditional stage only if a cumulative score corresponds to a target score, wherein said cumulative score includes said first score value and said second score value;

a code segment for enabling said user to provide a message at the end of the simulation indicating whether the student passed or failed the simulation;

a code segment for enabling said user to review the simulation and flag errors, questions, and spots of interest,

40

> wherein the simulation is designed for training students to interact with clients.

Appx0029, '522 patent, 11:17-67.

As is evident, claim 1 purports to claim nothing more than the abstract concept of implementing a social simulation in a computer program. Similarly, in *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005 (Fed. Cir. 2014), the invention was a computerized bingo system that managed all aspects of a bingo game, including printing bingo tickets on site, tracking ticket sales, validating winning tickets, and detecting and preventing tampering. Nevertheless, this Court found that the claims were abstract because "managing the game of bingo 'consists solely of mental steps which can be carried out by a human using pen and paper.'" *See also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367-68 (Fed. Cir. 2015) (citation and internal quotation omitted) ("software generally comprises a method of organizing human activity").

Attempts to claim abstract ideas by claiming them in the context of a computer program and/or limited to a specific industry consistently have been held not to pass muster under 35 U.S.C. §101. For example, in *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013), this Court explained:

> Accenture attempts to limit the abstract idea of claim 1 by applying it in a computer environment and within the insurance industry. However, those types of limitations

> do not "narrow, confine, or otherwise tie down the claim." As we have recently held, simply implementing an abstract concept on a computer, without meaningful limitations to that concept, does not transform a patent-ineligible claim into a patent-eligible one. . . . Accenture's attempts to limit the abstract concept to a computer implementation and to a specific industry thus do not provide additional substantive limitations to avoid preempting the abstract idea of system claim.

See also buySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("The dependent claims' narrowing to particular types of such relationships, themselves familiar, does not change the analysis. This kind of narrowing of such long-familiar commercial transactions does not make the idea non-abstract for section 101 purposes.")

Because the '522 patent claims cover only the abstract idea of creating social simulations via a computer program, they fail the first part of the Supreme Court's *Alice* test.

> **c.    Part II Of The *Alice Test*: The Claim Elements Do Not Transform The '522 Patent Claims Into Patent-Eligible Subject Matter**

The claims of the '522 patent also fail the second part of the *Alice* test. The second part of the test considers whether the claim elements, individually or in combination, transform the claim "into a patent-eligible application of a patent-ineligible concept." *Versata Dev. Group, Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1332 (Fed. Cir. 2015). To qualify as a patent eligible transformation, the

claims must do more than state an abstract idea while adding words such as "apply it" or "apply it with a computer." *Id.* Nor does it suffice to limit the use of an ineligible concept to a particular technology. *Id.*

Here, the '522 patent states that:

> The present invention relates to electronically creating social simulations. More particularly, the present invention involves a method and computer program for enabling a user to create a computer-based social simulation by defining various parameters of the simulation, testing the simulation, and publishing the simulation.

Appx0024, '522 patent, 1:6-11.

But, the parameters of the simulation do not "transform the nature of the claim into a patent-eligible application of a patent-ineligible concept." *Versata*, 793 F.3d at 1332. For example, the following social simulation parameters (underlined) appear in claim 1:

> a code segment for <u>enabling a user to create a plurality of social simulation stages</u>;
> a code segment for <u>enabling said user to create a first character and a second character and to associate each of the first character and the second character with at least one of the plurality of social simulation stages, each of the characters being a video representation of a real person</u>;
> a code segment for <u>enabling said user to provide characteristics to each of the first character and the second character, the characteristics including an image, a name, a personality, a title and a position of the respective character</u>;

a code segment for <u>enabling said user to create at least one social interaction between said user and each of the first character and the second character, wherein the first character provides a first character response and the second character provides a second character response that is different than the first character response;</u>

a code segment for <u>enabling said user to create at least one set of possibilities associated with each social simulation stage, wherein each possibility has a consequence which determines the next step of the simulation, the next step of the simulation being either another set of possibilities or an end of the simulation;</u>

a code segment for <u>enabling said user to create a map associating each of said plurality of social simulation stages with at least one other of said plurality of social simulation stages; a code segment for enabling said user to assign a first score value to a first student response and a second score value to a second student response, wherein said first student response and said second student response are received from a student during at least one of said plurality of social simulation stages;</u>

a code segment for <u>enabling said user to assign a condition to a conditional stage of said plurality of social simulation stages such that said student experiences said conditional stage only if a cumulative score corresponds to a target score, wherein said cumulative score includes said first score value and said second score value;</u>

a code segment for <u>enabling said user to provide a message at the end of the simulation indicating whether the student passed or failed the simulation;</u>

a code segment for <u>enabling said user to review the simulation and flag errors, questions, and spots of interest,</u>

Appx0029, '522 patent, 11:17-65 (emphasis added).

44

None of these parameters transforms the abstract idea of creating a social simulation into patentable-eligible subject matter. All of these limitations are merely instructions to implement the abstract concept of a social simulation using software code readable on a computer. The same is true for each and every one of the other 24 claims of the '522 patent. *See* Appx0029-0030, 11:17 to 14:64. For that reason, all of the claims of the '522 patent also fail the second prong of the *Alice* test. *See Alice*, 134 S.Ct. at 2359 (internal citation omitted) (although computer capability achieved financial activity of a scope not previously available, no inventive concept was found in the claims, for the "computer functions are 'well-understood, routine, conventional activities' previously known to the industry'"); *Planet Bingo, LLC v. VKGS LLC*, App. No. 2013-1663, 576 Fed. Appx. 1005, 1008 (Fed. Cir. Aug. 26, 2014) (internal citations and quotations omitted) ("if a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer,' . . . that addition cannot impart patent eligibility"); *OIP Technologies*, 788 F.3d at 1363 (finding patent claims did not meet the second test in *Alice* because "[a]t best, the claims describe the automation of the fundamental economic concept of offer-based price optimization through the use of generic-computer functions. Both the prosecution history and the specification emphasize that the key distinguishing feature of the claims is the ability to automate or otherwise make more efficient traditional price-optimization

methods"); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2015) ("The additional limitations of these dependent claims do not add an inventive concept, for they represent merely generic data collection steps or siting the ineligible concept in a particular technological environment"); *Affinity Labs of Texas, LLC v. DirecTV*, LLC, Civ. No. W:15-CV-030, 2015 U.S. Dist. LEXIS 92889, *19 (W.D. Tex. July 7, 2015) ("In the instant case, the Magistrate Judge followed this [*Alice*] precedent in finding that 'Claim 1 takes the abstract idea and says "apply it" to a wireless, cellular telephone device acting as a generic computer'").

Contrasting the claims of the '522 patent with cases where courts have found patent-eligible subject matter is also instructive. In *Diamond v. Diehr*, 450 U.S. 175, 101 S. Ct. 1048, 67 L. Ed. 2d 155 (1981), the Supreme Court held that a claim to a computer-implemented process for curing rubber was patent eligible even though it employed a known mathematical equation because the claim used the equation in a process that solved a technological problem. In *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), this Court found patent eligible claims reciting a solution that was necessarily rooted in computer technology to overcome a problem specifically arising in the realm of computer networks. The Court in *DDR Holdings* drew a distinction between the patent-eligible claims at issue there and patent-ineligible claims that implemented

commonplace business methods in a particular technological environment. *Id.* at 1259; *see also Enfish, LLC v. Microsoft Corp.*, 822 F. 3d 1327 (Fed. Cir. 2016) (where this Court held that claims directed to models for creating particular tables of data were patent eligible under 35 U.S.C. § 101, observing that the focus of the claims "is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Id*. at 1336).

Here, unlike *Diamond, DDR Holdings*, and *Enfish*, the claims of the '522 patent do not transform the abstract idea of creating a social simulation into patent-eligible subject matter. The claims do not solve any technological problem; they merely employ a generic computer to implement the abstract idea of creating a social simulation.

Accordingly, this Court should find NexLearn's '522 patent invalid for claiming patent-ineligible subject matter in violation of 35 U.S.C. § 101. Doing so will return the abstract idea of the '522 patent to its rightful owner - the public.

### 2. NexLearn's Breach Of Contract Claim Should Also Be Dismissed For Failure To State A Claim

If this Court does not affirm the District Court's finding that AI is not subject to specific personal jurisdiction in the District of Kansas, this Court should also dismiss NexLearn's claim for breach of the NDA because NexLearn's Complaint does not plead a breach of contract claim for which relief can be granted. This issue was fully briefed before the District Court, but because the

District Court determined that it did not have personal jurisdiction over AI for NexLearn's patent infringement claim, the District Court did not reach this issue.

As noted above, the NDA by its terms expired 24 months after it was executed. Therefore, to state a cause of action for a breach of the NDA, NexLearn was required to plead when AI allegedly misappropriated NexLearn's confidential information in violation of the NDA. *See* Appx0044, ¶ 19. NexLearn's Complaint contains no such allegation. *See* Appx0036-0040 *(passim).* In view of NexLearn's failure to plead this essential element of its breach of contract claim, that claim should be dismissed. *See Five Star Automatic Fire Prot., LLC v. Nuclear Waste Partnership*, LLC, Civ. No. 14-622JCH/GBW, 2016 U.S. Dist. LEXIS 63592, *15-*16 (D.N.M. May 13, 2016) (dismissing cause of action for *prima facie* tort for failure to plead essential element); *Keehn v. United States* App. No. 2013-5084, 541 Fed. Appx. 996, 997 (Fed. Cir. 2013) (Unpublished) (affirming dismissal of implied-in-fact contract for failure to plead essential element); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining that a complaint must include "enough facts to state a claim to relief that is plausible on its face" to satisfy Fed. R. Civ. P. 8).

Although NexLearn did not plead when the alleged misappropriation occurred, in NexLearn's opposition to AI's motion to dismiss, NexLearn asserted that it "is alleging that Allen had ulterior motives *while* it was accessing the demo

version of SimWriter (which occurred before the expiration of the NDA)."
Appx0182 (emphasis in original).

According to NexLearn, AI employees accessed the demo of NexLearn's
SimWriter in 2009 (Appx0188-0189, ¶ 9; Appx0210), and it follows that
NexLearn's breach of contract claim accrued in 2009.  Yet NexLearn did not file
its Complaint alleging a breach of the NDA until September 2015.  Accordingly,
even accepting for purposes of this appeal the veracity of NexLearn's allegation
that AI misused NexLearn's confidential information in violation of the NDA, that
claim is barred by Kansas's five-year statute of limitations for breach of contract
claims.  *See, e.g.*, *Bagby v. Merrill Lynch*, 174 F.Supp.2d 1199, 1202-1203 (D.
Kan. 2001) (internal quotations omitted) ("The statute of limitations for breach of
contract claims based on written contracts is five years. K.S.A. 60-511(1).  A cause
of action for breach of contract accrues when a contract is breached by the failure
to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff
or of any actual injury it causes").

Therefore, if this Court concludes that AI is subject to personal jurisdiction
in the District of Kansas for NexLearn's patent infringement claim, this Court
should dismiss NexLearn's breach of contract claim with prejudice for failure to
plead an essential element of that claim and/or because that claim is time barred.

## VIII.  CONCLUSION

Because NexLearn has not met its burden of establishing that AI is subject to specific personal jurisdiction in the District of Kansas, this Court should affirm the District Court's dismissal of NexLearn's Complaint.

In the alternative, should this Court find that AI is subject to personal jurisdiction in the District of Kansas, then this Court should dismiss with prejudice (1) NexLearn's claim for patent infringement because NexLearn's '522 patent claims unpatentable subject matter in violation of 35 U.S.C. § 101; and (2) NexLearn's claim for breach of contract because NexLearn failed to plead an essential element of that claim and/or because that claim is time barred.

## IX.  STATEMENT OF ORAL ARGUMENT

Oral argument is respectfully requested.


Dated: September 7, 2016       By:  */s/ Martin B. Pavane*
                                    Martin B Pavane
                                    Darren S. Mogil
                                    COZEN O'CONNOR
                                    277 Park Avenue
                                    New York, NY 10172
                                    Telephone: (212) 883-4900
                                    Facsimile: (212) 986-0604

27956992v2

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 7, 2016, I electronically filed the foregoing **PRINCIPAL AND RESPONSE BRIEF FOR DEFENDANT-CROSS-APPELLANT ALLEN INTERACTIONS, INC. (CORRECTED)** with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF system, which will also effect service on all counsel of record.

Dated:  September 7, 2016          By: */s/ Martin B. Pavane*

*Attorney for Defendant-Cross-Appellant Allen Interactions, Inc.*

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rules of Appellate Procedure 28.1(e)(2) and 32(a)(7), I hereby certify that the foregoing **PRINCIPAL AND RESPONSE BRIEF FOR DEFENDANT-CROSS-APPELLANT ALLEN INTERACTIONS, INC. (CORRECTED)** complies with the relevant type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7).  This brief is typed in Times New Roman (14-point) and contains 11,018 words according to the Microsoft Word 2013 system.

Dated:  September 7, 2016        By: */s/Martin B. Pavane*

*Attorney for Defendant-Cross-Appellant Allen Interactions, Inc.*